UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-81176-BLOOM/Valle

CHESNEL JOSEPH,

    Plaintiff,

v.

LEONARDO BAILUM, *et al.*,

    Defendants.

_____/

## **ORDER**

**THIS CAUSE** is before the Court upon the Motion to Dismiss, ECF No. [48] (the "Motion"), filed by Defendants Tammy Gregory ("Ms. Gregory") and Sheriff Ric Bradshaw ("Sheriff Bradshaw") of the Palm Beach County Sheriff's Office ("PBSO") (collectively, "Defendants") with respect to Plaintiff Chesnel Joseph's ("Plaintiff" or "Mr. Joseph") Amended Complaint, ECF No. [45]. The Court has carefully reviewed the Motion, all supporting and opposing submissions, the record, and applicable law. For the reasons set forth below, the Motion is granted in part and denied in part.

### I. Background

The Court set forth the facts of this case in its prior Order, ECF No. [43], granting in part and denying in part the first Motion to Dismiss in this case, ECF No. [15], which was filed by Defendants and former Defendants Mack Davis ("Deputy Davis") and Leonardo Bailum ("Deputy Bailum"). Those facts bear repeating here given their pertinence to the Court's instant analysis.

On June 30, 2016, Plaintiff filed suit against Defendants and Deputies Davis and Bailum alleging claims for battery, violations of 42 U.S.C. § 1983, malicious prosecution, negligence, false arrest and false imprisonment, and violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA").

On the morning of July 5, 2012, Mr. Joseph, who had been newly diagnosed with epilepsy after suffering his first grand mal seizure on June 6, 2012, underwent another grand mal seizure while at the home of his sister, Alicia Exil ("Mrs. Exil").  ECF No. [45] at ¶¶ 15, 18. Distraught over Mr. Joseph's grand mal seizure, Mrs. Exil, who spoke only "a little English with a very heavy Creole accent[,]" called 911 seeking medical help.  *Id.* at ¶ 18.

Mrs. Exil told the 911 operator, Ms. Gregory, that Mr. Joseph was "sick" and attempted to describe to her the symptoms Mr. Joseph was experiencing.  *Id.* at ¶ 20.  Mr. Joseph's "eyes were repeatedly blinking, he was profusely sweating, and he was having convulsions and jerking movements."  *Id.*  Mrs. Exil asked Ms. Gregory for "help" and "repeatedly stated that her brother [] was 'sick.'"  *Id.*  Ultimately, Mrs. Exil was "unable to properly describe" in English to Ms. Gregory, who did not speak Creole, Mr. Joseph's medical condition.  *Id.* at ¶ 21.  Ms. Gregory did not seek out or find another 911 operator who did speak or understand Creole or French.  *Id.* Ms. Gregory "repeatedly asked" Mrs. Exil if Mr. Joseph "was drunk or had used or had smoked drugs," to which Mrs. Exil responded with a "definitive 'no.'"[1]  *Id.* at ¶ 23.  Ms. Gregory informed Mrs. Exil that she would send "help" to Mrs. Exil's house.  *Id.* at 24.  At no time did Mrs. Exil request police intervention.  *Id.* at ¶ 22.

---

[1] According to the Amended Complaint, Ms. Gregory "conducted herself in a rude and condescending manner."  *Id.* at ¶ 24.

2

Ms. Gregory did not send an ambulance to Mrs. Exil's house, but instead sent two deputies from PBSO—Deputy Davis and Deputy Bailum—"by falsely reporting that there was a violent domestic disturbance in progress at Mrs. Exil's' [sic] home." *Id.* at ¶ 25. Ms. Gregory "falsely advised the PBSO dispatch office that [Mr. Joseph] was verbally abusive with . . . Mrs. Exil, threatened suicide, and posed a threat or danger to everyone in the Exil home[.]" *Id.* at ¶ 28.

Deputy Davis arrived to the house "[i]n a matter of a few minutes of Mrs. Exil's call to 911[]," at which point Mrs. Exil's young children "immediately let him in." *Id.* at ¶ 29. Mrs. Exil directed Deputy Davis to Mr. Joseph and expressly told him that Mr. Joseph "was an 'epileptic' and was 'sick.'" *Id.* When asked by Deputy Davis if Mr. Joseph was drunk or had smoked or used drugs, Mrs. Exil responded with a "definitive 'no'" and "stated again that [Mr.] Joseph was an 'epileptic' and was 'sick.'" *Id.* at ¶ 30. At no time did Mrs. Exil indicate to Deputy Davis that Mr. Joseph posed a threat or danger to himself or anyone else in her home. *Id.*

Deputy Davis proceeded to "shout loud verbal commands" in English to Mr. Joseph, who, with "rigid or tense muscles[,]" continued to sweat profusely and blink his eyes repeatedly. *Id.* at ¶¶ 31-32. Mr. Joseph, still undergoing an epileptic grand mal seizure, was "incapable, by reason of his disability, of responding to" Deputy Davis' commands. *Id.* at ¶ 33. Deputy Davis then placed Mr. Joseph under arrest for his "failure to obey" the commands. *Id.* at ¶ 34. At this point, Deputy Davis then tried "to handcuff [Mr.] Joseph and physically grabb[ed] him." *Id.* at ¶ 35. In doing so, Deputy Davis "was able to grab hold of and handcuff one of [Mr.] Joseph's hands." *Id.* at ¶ 36. Due to "involuntary teeth clenching caused by [the] epileptic seizure activity," Mr. Joseph then "involuntarily bit" Deputy Davis' right forearm as Deputy Davis

3

attempted to place the handcuff on Mr. Joseph's second hand, which was near Mr. Joseph's mouth. *Id.*

By this point, Deputy Bailum had arrived to Mrs. Exil's house, and almost immediately thereafter "[Mr.] Joseph was beset upon by both [deputies] who tased [Mr.] Joseph five (5) different times." *Id.* at ¶ 37. At one point Deputy Bailum "jumped on top of" Mr. Joseph and "ramm[ed] his taser weapon directly onto [Mr.] Joseph's lower abdomen and fir[ed] the same." *Id.* at ¶ 39. Mr. Joseph suffered an open wound on his lower abdomen as a result of Deputy Bailum's actions. *Id.* "At some point during the tasing sequence, [Deputies] Davis and Bailum both upholstered their service handguns and pointed [them] at [Mr.] Joseph and threatened to shoot him." *Id.* at ¶ 41. Mr. Joseph "ended up prone and semi-conscious" in the front lawn of Mrs. Exil's house. *Id.* at ¶ 40. Once subdued, Mr. Joseph was treated for his wounds at the scene by an ambulance crew summoned by the PBSO deputies and was thereafter transported to the hospital. *Id.*

Deputies Davis and Bailum charged Mr. Joseph with two felonies – battery on a law enforcement officer and resisting arrest with violence. *Id.* at ¶ 44. According to the Amended Complaint, the police report prepared by Deputies Davis and Bailum "contained false statements and/or material omissions." *Id.* at ¶ 45.[2]

Based on these factual allegations, Mr. Joseph filed suit on June 30, 2016, asserting thirteen claims for relief in his initial Complaint, ECF No. [1], including: battery, excessive force under 42 U.S.C. § 1983, and malicious prosecution against Deputy Davis (Counts I-III); battery and excessive force under 42 U.S.C. § 1983 against Deputy Bailum (Counts IV-V); negligence

---

[2] An internal affairs investigation into the incident conducted "several years" later found no wrongdoing. *Id.* at ¶ 49.

4

against Ms. Gregory (Count VI); negligence against Sheriff Bradshaw (Count VII); false arrest/imprisonment against Deputy Davis (Count VIII); false arrest/imprisonment against Deputy Bailum (Counts IX-X); unconstitutional policy, custom, and usage under 42 U.S.C. § 1983 against Sheriff Bradshaw (Count XI); and violations of the ADA against Sheriff Bradshaw (Counts XII-XIII).  On September 9, 2016, Defendants and former Defendants filed the first Motion to Dismiss in this case, ECF No. [15], seeking dismissal of Mr. Joseph's entire initial Complaint for failure to state a claim, which the Court granted in part on November 28, 2016, ECF No. [43].  Counts I-V and VII-X of the initial Complaint were dismissed with prejudice, and Mr. Joseph was granted leave to amend Counts VI and XI.  ECF No. [43] at 26.

Mr. Joseph thereafter filed an Amended Complaint on December 8, 2016, ECF No. [45], reasserting the negligence claim against Ms. Gregory (Count I), the unconstitutional policy, custom, and usage claim under 42 U.S.C. § 1983 against Sheriff Bradshaw (Count II), and the ADA claims against Sheriff Bradshaw (Counts III-IV).  The Amended Complaint also asserts a battery claim against PBSO (Count V).  *Id.*  Defendants now move to dismiss the entire Amended Complaint for failure to state a claim.

**II.  Legal Standard**

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Nor can a complaint rest on "'naked assertion[s]' devoid of

5

'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). Although the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.") (internal quotation marks omitted).

**III. Discussion**

**A. Negligence Claim against Tammy Gregory (Count I)**

Under Fla. Stat. § 768.28(9)(a):

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

*See also Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1366 (S.D. Fla. 2016) ("Section 768.28(9)(a) [] clothes governmental employees with individual immunity that is lost

6

only as to torts committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights and safety.") (quoting *Castellano v. Raynor*, 725 So. 2d 1197, 1198 (Fla. 2d DCA 1999)); *Parker v. Fla. Bd. of Regents*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998) ("Although the statute does not define 'bad faith,' under section 768.28(9)(a), '[b]ad faith has been equated with the actual malice standard.'"). In its prior Order dismissing Mr. Joseph's negligence claim against Ms. Gregory, the Court held that the initial Complaint did not sufficiently allege that the actions of Ms. Gregory were performed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property so as to pierce the immunity afforded to her under Fla. Stat. § 768.28(9)(a). *See* ECF No. [43] at 8-9.

The Amended Complaint, like the initial Complaint, "is clear that meaningful communication between [Ms. Gregory] and Mrs. Exil was prevented by the language barrier." *Id.* at 8; *see also* ECF No. [45] at ¶ 21 ("Mrs. Exil was unable to properly describe [to Ms. Gregory] Joseph's medical condition in English." ); *id.* at ¶ 85 ("[Ms.] Gregory did not speak Creole, and she stated that was [sic] having great difficulty in understanding Mrs. Exil."). In dismissing the negligence claim against Ms. Gregory, the Court explained that the assertion raised in Mr. Joseph's response to the first Motion to Dismiss that Ms. Gregory's inaccurate 911 report was motivated by prejudice as to non-English speakers and/or Haitians—rather than attributable to the language barrier—constituted an inference "amount[ing] to a legal conclusion . . . [that is] far too speculative without further factual enhancement." ECF No. [43] at 8 (citing ECF No. [34] at 5). Accordingly, the Court granted leave to amend to allow Mr. Joseph the opportunity to assert "specific factual allegations to support [his] argument that Ms. Gregory's allegedly false 911 report was motivated by prejudice." *Id.* at 9.

Mr. Joseph once again relies on—this time by way of allegation in the Amended Complaint—the conclusory assertion that Ms. Gregory's "false statements as to there a [sic] violent domestic disturbance in progress at Mrs. Exil's home were made out of prejudice and thinking that Haitians were either drug users or violent people." ECF No. [45] at ¶ 90; *see also* ECF No. [34] at 5. And, once again, Mr. Joseph has failed to present specific factual allegations demonstrating that Ms. Gregory's inaccurate 911 report was motivated by prejudice. Indeed, the Amended Complaint is void of any new factual allegations bearing on this issue. *Compare* ECF No. [45] at ¶¶ 81-93, *with* ECF No. [1] at ¶¶ 98-110. In similar fashion, Mr. Joseph's Response to Defendants' Motion, ECF No. [59] at 6-8, ignores Ms. Gregory's alleged prejudice altogether, and, by doing so, offers no argument whatsoever as to how the factual allegations pled in the Amended Complaint overcome the immunity afforded Ms. Gregory under Florida statutory law.[3] In essence, the deficiencies relating to Mr. Joseph's dismissed negligence claim against Ms. Gregory remain, and it appears that further amendment would be futile. Thus, the negligence claim against Ms. Gregory is dismissed with prejudice.

**B. Unconstitutional Policy, Custom, and Usage Claim under Section 1983 against Sheriff Bradshaw (Count II)**

The Amended Complaint, like Mr. Joseph's initial Complaint, sets forth numerous allegations pertaining to the practices of PBSO, but the thrust of those allegations relate to PBSO's training, supervision, and discipline of its deputies and other employees—such as 911 operators—particularly with respect to their practices in responding to "non-threatening individuals who suffer from disabilities and/or medical illnesses[.]" ECF No. [45] at ¶ 98. More

---

[3] Instead, Mr. Joseph essentially argues that the manner in which Ms. Gregory handled the 911 call prevented third-parties who would have provided Mr. Joseph aid or medical assistance from arriving on the scene. *Id.* at 7-8. But this argument does not speak to the statutory immunity afforded Ms. Gregory—the sole basis for the Court's prior dismissal of the negligence claim asserted against her.

specifically, the Amended Complaint alleges that PBSO "fail[ed] to adequately supervise, discipline, and train [its] employees, agents, and deputies . . . in the appropriate response to people undergoing epileptic grand mal seizures[,]" *id.* at ¶ 103, and that PBSO "ratified the misconduct" of Deputies Davis and Bailum by failing to "discipline [them and] failing to conduct a thorough investigation," *id.* at ¶ 105. According to the Amended Complaint: "PBSO had a policy and custom that constituted deliberate indifference to [Mr. Joseph's] constitutional rights, and PBSO's policy and custom deprived [Mr. Joseph] of his rights under the Constitution and the laws of the State of Florida, resulting in the use of excessive and unreasonable force . . . ." *Id.* at 4.

Section 1983 provides a private cause of action for a government's unconstitutional actions. *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). A plaintiff asserting a section 1983 claim must show that the governing body itself caused his or her injury. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Specifically, to state a claim against a government agency under section 1983, the plaintiff must show: "(1) that his constitutional rights were violated; (2) that the [government] had a custom or policy that constituted a deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "Stated differently, a local government agency is liable for a civil rights violation 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Anderson v. Moore*, 2016 WL 4369543, at *8 (M.D. Fla. Aug. 16, 2016) (quoting *Monell*, 436 U.S. at 694). "Analysis of a state entity's custom or policy is unnecessary, however, when no constitutional violations has occurred." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1161 (11th Cir. 2009) (citing *Case v. Eslinger*, 555

F.3d 1317, 1328 (11th Cir. 2009)); *see also Case*, 555 F.3d at 1328 (declining to review the sheriff's and city's customs and policies in the absence of a constitutional deprivation by the individual police officer); *Myers v. Bowman*, 713 F.3d 1319, 1328-29 (11th Cir. 2013) ("[A] supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right."); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("Since we have determined that Deputy Watson's conduct did not cause the Rooneys to suffer a constitutional deprivation, we need not inquire into Volusia County's policy and custom relating to patrol vehicle operation and training.").

Here, turning first to Deputies Davis and Bailum, Mr. Joseph's section 1983 claims for excessive force and false arrest against the deputies have been dismissed with prejudice. *See* ECF No. [43] at 16-19. In dismissing the excessive force claims, the Court concluded that "the facts alleged . . . do not establish that the force used by Deputies Davis and Bailum in effectuating Mr. Joseph's arrest was unnecessary and disproportionate so as to contravene the Fourth Amendment." *Id.* at 18. With respect to the false arrest claims, the Court concluded that such claims were barred given that the initial Complaint established that Deputies Davis and Bailum had probable cause that Mr. Joseph had committed a crime. *Id.* at 18-19. In effect, then, Mr. Joseph has failed to show that either Deputy Davis or Deputy Bailum deprived him of his constitutional rights by using excessive force or falsely arresting him. As for Ms. Gregory, the Amended Complaint's factual allegations pertaining to her handling of the 911 call simply do not demonstrate that she herself deprived Mr. Joseph of any his constitutional rights. Indeed, Mr. Joseph does not assert a section 1983 claim against Ms. Gregory and his only claim against her is for negligence. *See, e.g.*, ECF No. [45] at 4 ("PBSO's policy and custom deprived the Plaintiff of his rights under the Constitution and the laws of the State of Florida, resulting in the use of

*excessive and unreasonable force*") (emphasis added); *id.* at ¶ 107 (basing PBSO's section 1983 liability off of the deprivation of Mr. Joseph's "rights, privileges and immunities secured by the Fourth Amendment . . . including the right to be secured in their persons against *unreasonable seizures including excessive force*") (emphasis added). Thus, absent a constitutional violation on the part of either of the deputies or Ms. Gregory, the Court need not inquire into PBSO's polices and customs relating to the training, supervision, or discipline of its deputies and 911 operators.[4] *See Case*, 555 F.3d at 1328; *Rooney*, 101 F.3d at 1381; *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573 (1986) ("[N]either *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm.").

### C. ADA Claims against the Palm Beach County Sheriff's Office (Counts III and IV)

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a Title II ADA claim, "a plaintiff must generally prove: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2001) (citing *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir.2001));

---

[4] While the Court recognizes that the section 1983 claim against Sheriff Bradshaw could have been dismissed with prejudice on this basis in the Court's prior Order, ECF No. [43], the argument had not then been presented to the Court, as it has been here, *see* ECF No. [48] at 14.

*see also Rylee v. Chapman*, 316 Fed. Appx. 901, 906 (11th Cir. 2009) ("A plaintiff can proceed on theories of intentional discrimination, disparate treatment, or failure to make reasonable accommodations.") (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008)). Here, once again at issue is whether Mr. Joseph was, as a result of his arrest, excluded from participation in, or denied the benefit of, some "services, programs, or activities" of PBSO by reason of his disability, *or* was "subjected to discrimination" by PBSO by reason of his disability. 42 U.S.C. § 12132.

"Under the ADA[,] . . . a discrimination claim based on an arrest situation usually arises in two different situations: (1) when police wrongfully arrest someone by mistaking his disability for criminal conduct, and (2) when police properly investigate and arrest someone with a disability for a crime unrelated to the disability and then fail to reasonably accommodate the disability in the course of the investigation or arrest." *Bircoll v. Miami-Dade County*, 410 F. Supp. 2d 1280 (S.D. Fla. 2006) *aff'd*, 480 F.3d 1072 (citing *Gohier v. Enright*, 186 F.3d 1216, 1220-21 (10th Cir. 1999)). In its prior Order, the Court found that the ADA claims asserted by Mr. Joseph are sufficiently pled to the extent that they are based on a wrongful arrest theory, explaining that the initial Complaint "sufficiently allege[d] a causal link between Mr. Joseph's arrest and his disability." ECF No. [43] at 24. As such, the Court dismissed Mr. Joseph's ADA claims "only insofar as they are based on a theory that PBSO failed to reasonably accommodate Mr. Joseph's disability during the course of his arrest[.]" *Id.* at 26. Undeterred, Defendants again seek dismissal of Mr. Joseph's ADA claims to the extent that they are based on a wrongful arrest theory.

Defendants contend that Mr. Joseph's ADA claims are precluded by Mr. Joseph having unlawfully bit Deputy Davis "during the episode and before [Mr. Joseph] was arrested . . . ."

12

ECF No. [48] at 18-20.  More specifically, Defendants argue that to state an ADA claim based on a wrongful arrest theory, a plaintiff must show that the disability-related conduct that led to the arrest constituted lawful conduct, and that lawful conduct does not include biting a police officer who is performing his or her official duties.  *Id.*  Defendants' argument is unavailing for a couple of reasons.  To begin with, the argument misconstrues the Amended Complaint, which clearly alleges that the bite did not occur until *after* Deputy Davis initiated his arrest of Mr. Joseph.  *See* ECF No. [45] at ¶¶ 34-36; *see also* ECF No. [43] at 10 ("As the [initial] Complaint makes clear, it was [Mr. Joseph's] *inability and failure to obey* that ultimately led to [him] being placed under arrest.") (internal quotation marks omitted) (emphasis added).  As such, Defendants' assertion that "Deputy Davis arrested [Mr. Joseph] for biting him" is misleading.  ECF No. [48] at 20.  It simply cannot be said that conduct Mr. Joseph did not engage in until after the onset of his arrest was the same and only conduct for which he was arrested for in the first place.

Relatedly, the issue of timing aside, Defendants' focus on the bite and the purported unlawfulness of the bite ignores the totality of the conduct that, according to the Amended Complaint, actually led to Mr. Joseph's arrest.  As did the initial Complaint, the Amended Complaint "alleges that Deputies Davis and Bailum mistook the *physical symptoms* exhibited by Mr. Joseph while he was experiencing a grand mal seizure for resistance . . . ."  ECF No. [43] at 24 (emphasis added).  The bite was just one of the physical symptoms exhibited by Mr. Joseph as a result of his seizure. It was the totality of those symptoms—which included profuse sweating, rapid eye blinking, and rigid or tense muscles—and the resulting behaviors exhibited by Mr. Joseph—i.e., Mr. Joseph's incapacity to respond to and failure to obey Deputy Davis' commands—that ultimately led to Mr. Joseph's arrest.  *See* ECF No. [45] at ¶¶ 31-34.

Defendants, relying solely on the bite, make no argument—and the Court sees no basis for one—that these particular symptoms and resulting behaviors were unlawful in this context. As such, the Court finds Defendants' argument that the conduct leading to Mr. Joseph's arrest was unlawful, thereby precluding Mr. Joseph's ADA claims, to be without merit.[5]

Defendants' reliance on *Everson v. Leis*, 412 Fed. Appx. 771 (6th Cir. 2011) is misplaced. The plaintiff in *Everson* suffered an epileptic seizure in a mall bathroom and was arrested shortly thereafter due to physical altercations that took place between him and various individuals that arrived on the scene for assistance—including EMS employees, police officers, and mall security staff. *See id.* at 775-76. The plaintiff brought a claim for discriminatory arrest under the ADA and, like Mr. Joseph, claimed that all of his aggressive actions were the involuntary result of his seizure. *Id.* at 773. The Sixth Circuit summarized those actions as follows:

> [The plaintiff] threatened to swing at mall security staff and local EMS. He kicked and swung at individuals as they approached him. When Deputy Wittich attempted to retrieve [the plaintiff's] identification, [the plaintiff] became violent and kicked the deputy. After being placed on the ground, [the plaintiff] continued to kick and fight. When an EMS worker tried to obtain a blood sugar reading, [the plaintiff] pushed the worker away.

*Id.* In affirming the district court's grant of summary judgment in favor of the defendant deputy who made the arrest, the Sixth Circuit held that the plaintiff could not establish that the arresting

---

[5] The Court notes Defendants' argument in their Reply, ECF No. [61] at 7, that because Mr. Joseph has not addressed the argument that his arrest was not the result of legal conduct related to his disability because he bit Deputy Davis, Mr. Joseph "has conceded this point[] and has waived or abandoned this claim." However, the Court need not rely on argument from Mr. Joseph where Defendants seek dismissal of a claim that the Court has already found to have been sufficiently pled and the argument in support of dismissal disregards the thrust of the Court's rationale for that conclusion. *See, e.g.*, ECF No. [43] at 24-25 ("[T]he [initial] Complaint alleges that Mr. Joseph's disability prevented him from complying – either verbally or physically – with the commands of Deputies Davis and Bailum, and even caused Mr. Joseph to bite Deputy Davis, *all of which* constituted behavior that Defendants admit contributed to Mr. Joseph's arrest.") (emphasis added).

deputy *intentionally* discriminated against him because of his disability. *Id.* at 776-79. Central to that holding was the lack of record evidence demonstrating that the deputy knew that the plaintiff's conduct "was caused by his disability or that [the deputy] acted because of—rather than in spite of—[the plaintiff's] disability." *Id.* at 778.

Here, in contrast to the ADA claim at issue in *Everson*, the central premise to Mr. Joseph's ADA claims are that Deputies Davis and Bailum were *not* aware that Mr. Joseph was suffering from or had just suffered an epileptic seizure and, as a result, *misperceived* Mr. Joseph's symptoms as criminal conduct. *See generally Bircoll*, 410 F. Supp. 2d at 1285 (citing *Gohier*, 186 F.3d at 1220-21, and identifying as one of two typical situations in which a discrimination claim under the ADA based on an arrest commonly arises is "when police wrongfully arrest someone by *mistaking* his disability for criminal conduct") (emphasis added); *Gohier*, 186 F.3d at 1220-21 ("Federal courts have addressed [ADA] Title II claims arising from arrests under two different theories. The first is that police wrongly arrested someone with a disability because they *misperceived* the effects of that disability as criminal activity.") (emphasis added) (internal citation omitted).[6] Moreover, *Everson* is distinguishable from a

---

[6] The Court notes the differing approaches that have been taken by courts addressing similar claims. Citing to its own precedent, the Sixth Circuit in *Everson* explained that in order for the plaintiff to have prevailed on his ADA claim, he would have had to establish that the arresting deputy's discrimination was intentional, which, under the particular circumstances in that case, would have required knowledge on the part of the arresting deputy that the plaintiff's conduct was caused by his seizure. *See* 412 Fed. Appx. at 776-79 (citing *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005), and *Tucker v. Tennessee*, 539 F.3d 526, 535 (6th Cir. 2008)). In contrast, other courts have held that "a plaintiff may recover under the ADA where he can show that (1) he was disabled, (2) the defendants knew *or should have known* he was disabled, and (3) the defendants arrested him because of legal conduct related to his disability." *Lewis v. Truitt*, 960 F. Supp. 175, 178 (S.D. Ind. 1997) (emphasis added) (collecting cases); *see also Gorman v. Bartch*, 925 F. Supp. 653, 656 (W.D. Mo. 1996) (noting in the ADA's legislative history the "concern that disability-related conduct (e.g., an epileptic seizure) is *confused* with criminal activity, leading to the arrest of the disabled individual") (emphasis added) (citing H.R. Rep. No. 485(III), 101st Cong., 2d Sess. 50, reprinted in 1990 U.S.C.C.A.N. 267, 445, 473). For purposes of Defendants'

15

factual standpoint. Observing that there was strong record evidence to support the arresting deputy's belief that the plaintiff's conduct "was, in fact, purposeful[,]" the Sixth Circuit described the events leading up to the plaintiff's arrest as follows:

> When [the deputy] . . . arrived at the scene, [the plaintiff] was not randomly thrashing about, but was engaging in what appeared to be targeted physical and verbal attacks. [The plaintiff] threatened to swing at officers and EMS professionals and actually did kick, swing, and spit on the officers and EMS professionals. And, significantly, [the deputy] was told by an EMS professional that [the plaintiff's] conduct was *not* related to a seizure.

*Everson*, 412 Fed. Appx. at 778. In this case, the allegations presented in the Amended Complaint do not describe *targeted* attacks by Mr. Joseph—whether physical or verbal—nor do they allege that Mr. Joseph made any threats to either Deputy Davis or Deputy Bailum, let alone that Mr. Joseph followed through with such threats. Thus, *Everson* is inapposite to the instant case.

Based on the foregoing, the Court finds that Plaintiff's Amended Complaint, like his initial Complaint, adequately pleads claims based on a theory of wrongful arrest under the ADA. The Court, therefore, declines to dismiss Counts III and IV of the Amended Complaint.

### D. Battery Claim against the Palm Beach County Sheriff's Office (Count V)

Defendants seek dismissal of Count V of the Amended Complaint—a newly asserted claim that seeks to hold PBSO liable for Deputies Davis and Bailum's "intentional unwelcome and unprivileged touching of [Mr.] Joseph"—on the basis that such a claim is precluded by the Court's dismissal with prejudice of the excessive force and state law battery claims against the two deputies and the Court's finding that the two deputies did not use excessive force in effectuating Mr. Joseph's arrest. The Court agrees.

---

Motion, the Court's analysis is limited to the arguments presented to it. As such, there is no occasion here for the Court to determine at this point which approach is appropriate under Eleventh Circuit law.

Generally, Florida law permits a plaintiff to recover against a governmental entity for the tortious acts of its employees based on a theory of vicarious liability. *See* Fla. Stat. § 768.28 (governing the State of Florida and its subdivisions' waiver of sovereign immunity from tort liability); *Laster v. City of Tampa Police Dep't*, 575 Fed. Appx. 869, 872 (11th Cir. 2014); *Schober v. Town of Fort Myers Beach, Fla.*, 2014 WL 6469881, at *7 n.5 (M.D. Fla. Nov. 17, 2014). To prevail on a theory of vicarious liability against a municipality under Fla. Stat. § 768.28, a plaintiff must show liability on the part of the municipality's employee. *See Laster*, 575 Fed. Appx. at 873 ("To prevail on a theory of vicarious liability against the City under Fla. Stat. § 768.28, [the plaintiff] had to show liability on the part of . . . the City's employee.") (citing *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1500-01 (11th Cir. 1990)). Here, Mr. Joseph is unable to show liability for battery on the part of either Deputy Davis or Deputy Bailum.

To begin with, as Defendants correctly point out, the Court dismissed with prejudice the state law battery claims asserted against Deputies Davis and Bailum—the viability of which the newly asserted state law battery claim against PBSO necessarily depends on—holding that the initial Complaint failed to allege that the actions of the two deputies "were performed in 'bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property' so as to pierce the immunity afforded to them under Florida Statutory law." ECF No. [43] at 9 (quoting Fla. Stat. § 768.28(9)(a)). More importantly, and irrespective of the dismissal with prejudice, the state law battery claims against Deputies Davis and Bailum remain foreclosed by the findings that were central to the Court's dismissal of Mr. Joseph's section 1983 false arrest and excessive force claims against the two deputies. Specifically, the Court has concluded that the facts as alleged by Mr. Joseph, even construed in a light most

17

favorable to him, establish: (1) that Deputies Davis and Bailum had at least arguable probable cause to arrest Mr. Joseph, and (2) that the force used by Deputies Davis and Bailum to effectuate Mr. Joseph's arrest was not excessive in that the force was not disproportionate to the evolving threat as perceived by the two deputies.[7] *See* ECF No. [43] at 16-18; *see also* ECF No. [67] at 5-6. These findings are dispositive because "[u]nder Florida law, a police officer is entitled to use force reasonably necessary to effectuate an arrest and *police contact incident to an arrest cannot form the basis of a claim for battery*." *Soto v. City of Miami Beach*, 26 F. Supp. 3d 1304, 1311 (S.D. Fla. 2014) (citing *Lester v. City of Tavares*, 603 So.2d 18 (Fla.5th DCA 1992), and *City of Miami v. Albro*, 120 So.2d 23 (Fla.3d DCA 1960)) (emphasis added). Thus, "[a]s the Court has already determined that [Deputies Davis and Bailum] had arguable probable cause to arrest Plaintiff, and because the force allegedly used in this case is no more than that which is necessary to effectuate an arrest, [the two deputies'] conduct does not constitute battery as a matter of law." *Id.*

---

[7] The factual allegations presented in the Amended Complaint do not disturb either of these findings because the newly asserted battery claim against PBSO is based on the same sequence of events that the Court analyzed in dismissing the false arrest and excessive force claims—in particular, the force used by Deputy Davis in initiating Mr. Joseph's arrest and the force used by both deputies (including their tasers) thereafter. *See* ECF No. [45] at ¶¶ 35-40, 131. As explained in the Court's Order denying Mr. Joseph's Motion for Reconsideration, the Court found Mr. Joseph's arrest to be supported by probable cause based on considerations that Deputy Davis was informed by the 911 operator that a "violent domestic disturbance" was in progress, that Mr. Joseph was "physically unable" to respond to or comply with Deputy Davis' commands, and that Deputy Davis did not place Mr. Joseph under arrest until after Mr. Joseph's "failure to obey." ECF No. [67] at 5-6; *see also* ECF No. [43] at 10 (quoting ECF No. [1] at ¶¶ 25, 33-34). In finding that Deputies Davis and Bailum did not use excessive force in effectuating Mr. Joseph's arrest, the Court found determinative not only the above mentioned considerations, but also the "allegations that at one point [Mr. Joseph] bit Deputy Davis and that the Deputies 'did not resort to using their tasers until *after* Deputy Davis was unsuccessful in his efforts to control [Mr. Joseph] with his hands and after the bite.'" ECF No. [67] at 6 (quoting ECF No. [43] at 17) (emphasis in the original).

As such, there can be no liability for battery on the part of either Deputy Davis or Deputy Bailum, and thus, no liability for such a claim on the part of PBSO or Sheriff Bradshaw.[8]  *See Laster*, 575 Fed. Appx. at 873; *Schober*, 2014 WL 6469881, at *7 n.5.  Accordingly, the battery claim against PBSO is dismissed with prejudice.

## IV. Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, **ECF No. [48],** is **GRANTED IN PART** and **DENIED IN PART**.

2. Count I (Negligence against Gregory); Count II (Unconstitutional Policy, Custom, and Usage Claim under Section 1983 against Sheriff Bradshaw); and Count V (Battery Claim against the Palm Beach County Sheriff's Office) of the Amended Complaint are **DISMISSED** with prejudice.

3. Count III (Violation of Title II of the Americans with Disabilities Act against the Palm Beach County Sheriff's Office) and Count IV (Injunctive Relief against the Palm Beach County Sheriff's Office) survive and the Defendant shall file an Answer to the Amended Complaint **no later than April 3, 2017.**

**DONE AND ORDERED** in Miami, Florida, this 23rd day of February, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

---

[8] Mr. Joseph's citation to *Brisk v. City of Miami Beach, Fla.*, 709 F. Supp. 1146 (S.D. Fla. 1989), a case in which the court rejected an argument made by the defendants in that case—the City of Miami Beach and its chief of police—that Fla. Stat. § 768.28(9)(a) prohibits vicarious liability for intentional torts such as assault and battery, is inapposite.  Here, Defendants do not argue or even imply that liability on the part of PBSO or Sheriff Bradshaw is precluded because the underlying claim—battery—is an intentional tort. *See* ECF No. [48] at 20-21.

Case No. 16-cv-81176-BLOOM/Valle

cc:	counsel of record